UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANTHONY SAVA,

                    Plaintiff,

          -against-

MICHAEL J. ASTRUE,[1] Commissioner
of Social Security,

                  Defendant.
--------------------------------------------------------X

               **REPORT AND
RECOMMENDATION**

06 Civ. 3386 (KMK) (GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

      Plaintiff Anthony Sava commenced this action pursuant to 42 U.S.C. § 405(g),

challenging the decision by the Commissioner of Social Security ("the Commissioner")

to deny plaintiff's application for disability insurance benefits on the ground that plaintiff

was not disabled.  Presently before this Court are (1) plaintiff's motion to vacate the

Commissioner's decision and remand for a rehearing pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure ("FRCP"); (2) plaintiff's motion for attorneys fees and

costs pursuant to 28 U.S.C. § 2412; and (3) the Commissioner's cross-motion for

judgment on the pleadings to affirm the Commissioner's decision pursuant to Rule 12(c)

of the FRCP.  For the reasons that follow, I respectfully recommend that the case

should be remanded to the Commissioner for further findings.[2]

---

[1]  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue,
the current Commissioner of Social Security, has been substituted as the defendant in
this action.

[2]  The Court notes that the motion for fees and costs is premature for the purposes of
this Report and Recommendation pending a ruling by the district judge on the Rule
12(c) motions.

## I. BACKGROUND

Plaintiff was born on March 8, 1980.  He attended school through the ninth grade.  He eventually obtained a General Educational Development ("GED") credential.  From April 1999 to June 1999, plaintiff worked in the warehouse at Maytex Mills.  From June 1999 to December 2000, plaintiff worked as a deli clerk at Stop & Shop Supermarket.  In said position, he worked full-time, in shifts of five eight-hour days per week.[3]  From December 2000 to January 2000, plaintiff worked at Classic Westchester, a temporary employment agency, performing warehouse and valet duties. From January 2000 to July 2001, plaintiff worked in the warehouse of Westchester Restaurant Supply.  From July 2001 to September 2002, plaintiff worked for the Coca-Cola Company, performing production and warehouse duties.  At Westchester Restaurant Supply and Coca-Cola, plaintiff worked full-time (eight hours per day, five days per week).  In the warehouse positions, plaintiff stood or walked seven to seven and a half (7 to 7½) hours every day; at most, sat for a half (½) hour each day; lifted items, weighing from five to forty (5 to 40) pounds, six to seven (6 to 7) hours per day; carried items, weighing from thirty to forty (30 to 40) pounds, six (6) hours per day; and squatted, stooped, or bent at least five to six (5 to 6) hours per day.

On September 10, 2002, plaintiff slipped and fell against heavy equipment at work, causing lower back pain.  Subsequent x-rays and MRIs (Magnetic Resonance Imaging) revealed that he sustained an L5 herniated disc with impingement of the root

---

[3]  During plaintiff's administrative hearing, plaintiff was not permitted to describe the work duties of said position.  Admin. Record at 159-60 [hereinafter "R."].  Nonetheless, the vocational expert who testified at the hearing, Robert Jackson, described a deli clerk position as "light and unskilled" work.  R. at 171.

nerve on the left side.  The injury caused plaintiff to go on "light duty" at work.  However, he stopped working altogether on November 22, 2002.  Plaintiff has not been employed since then, or at least through the date of the present motions.  Plaintiff alleges that he is unable to work because of his back injury.

Plaintiff received treatment from several physicians for his complaints beginning in November of 2002.  Dr. Jan Johansson, a physiatrist, treated plaintiff from November 2002 through October 2003, and again from October 2004 through April 2005.  Therein, treatment included physical therapy and pain management through medication.  Plaintiff also received one epidural steroid injection between his March and May 2003 visits, but opted against further injections as the first provided no relief.  Dr. Johansson further recommended that he see a neurosurgeon and seek vocational retraining.  In a record dated February 16, 2005, Dr. Johansson also noted that plaintiff was "definitely much worse off as far as pain over the last two or three months" and that plaintiff's pain medication was not helping as well as it had before.  R. at 132.  Further, plaintiff had two independent medical examinations conducted by Dr. Steiner, who found him to be "partially and markedly disabled."[4]  R. at 111.

Plaintiff had at least two MRIs.  Plaintiff's October 19, 2003 MRI showed "a small to moderate-sized slightly left paracentral focal disc protrusion at L5-S1" which "slightly displaces the left S1 nerve root."  R. at 127.  Plaintiff's December 4, 2003 MRI showed "[d]isc space narrowing" and "[s]traightening of the lordotic curve."  R. at 120.  The latter MRI was conducted in conjunction with the Commissioner's retained consulting medical

---

[4]  Said medical records are not contained in the administrative record, but rather the examinations are noted within Dr. Johansson's records.

3

examiner, Dr. Li.  Dr. Li examined plaintiff on December 4, 2003.  R. at 118.  Dr. Li found that plaintiff walked with a slight limp; suffered from pain when squatting, had difficulty getting to and from a flat position; maintained fine motor activity; had full flexion of the cervical spine; had a full range of motion in the upper extremities; had limited ranges of motion and flexion in the thoracic and lumbar spine areas; had tenderness in the lumbosacral region and SI joint; had radiating muscle tightness when he sat; and had a full range of motion in the lower extremities.  R. at 119.  Dr. Li noted that plaintiff had difficulty conducting daily activities.  R. at 118.  Finally, Dr. Li stated that plaintiff had "a limitation on prolonged standing, walking, climbing, bending, squatting[,] . . . heavy lifting and carrying."  R. at 119.

Plaintiff also saw Dr. Gregory J. Garner, a chiropractor, from February 7, 2005 to March 16, 2005.  On February 7, 2005, Dr. Garner noted that plaintiff had a positive straight leg raising test at 30°.  R. at 128.  On March 16, 2005, Dr. Garner noted that plaintiff had a positive straight leg raising test at 50°.  Id.

On October 10, 2003, plaintiff applied for disability benefits.  Upon initial administrative review, his claim was denied on January 30, 2004.  On April 19, 2005, pursuant to plaintiff's request, an administrative law judge ("ALJ"), R. Neely Owen, conducted a hearing on plaintiff's claim.  On August 15, 2005, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA") and, therefore, was not entitled to disability benefits.  On February 10, 2006, the Appeals Council denied plaintiff's request for review and declared the ALJ's decision the final decision of the Commissioner of Social Security.  This action followed.

4

## II.  STANDARD OF REVIEW

"The ALJ has an obligation to develop the record in light of the nonadversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citation omitted).  The Commissioner's factual findings are conclusive if they are supported by substantial evidence.  See 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citation omitted).  "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quotation and citation omitted).  The reviewing court "may only set aside a determination which is based upon legal error or not supported by substantial evidence."  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998) (quotation and citation omitted).

## III.  STATUTORY DISABILITY

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  In addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Second Circuit has adopted a five-step analysis for evaluating disability

claims under the SSA:

1.  The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
2.  If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
3.  If the claimaint has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
4.  If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
5.  If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw, 221 F.3d at 132 (quoting DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir.

1998)).  In determining whether there is other work which the claimant could perform,

"the Commissioner must consider four factors: (1) the objective medical facts; (2)

diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the claimant's educational

background, age and work experience."  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999)

(quotation and citation omitted).

**IV.  ALJ'S DETERMINATION**

6

Here, the ALJ determined that plaintiff met the SSA disability status requirements from the onset date through December 31, 2004.  Next, the ALJ applied the five-step procedure and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 2002.  At step two, the ALJ determined that plaintiff suffered from a "severe" impairment, namely discogenic back disorder.  At step three, the ALJ concluded that there were "insufficient clinical findings to support a conclusion" that plaintiff had an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ determined that plaintiff retained the residual functional capacity for past relevant work.  Specifically, the ALJ found that plaintiff retained "the residual capacity to perform the full range of work at the medium level of exertion."  The ALJ stated that the clinical findings, plaintiff's conservative treatment, plaintiff's daily activities, and the opinions of the medical consultant examiner (Dr. Li) and Disability Determination Services reviewer (non-medical consultant) supported a finding that plaintiff could "frequently lift and carry 25 pounds (with occasional lifting/carrying of 50 pounds) and sit, stand, or walk as required in an 8-hour work day."  The ALJ found that plaintiff's subjective complaints of pain were not credible based on the non-medical consultant's report and plaintiff's testimony regarding his daily activities.  The ALJ further noted that Dr. Johansson was plaintiff's treating physician.  However, the ALJ "accorded very little weight" to Dr. Johansson's opinion.  The ALJ found that Dr. Johansson offered conclusory statements that plaintiff was disabled or unable to work.

In addition, the ALJ asked a vocational expert to describe the work level of a

7

hypothetic male, of the same age and stature of plaintiff, who had the same capacity to

work in the manner suggested by the non-medical consultant in plaintiff's Physical

Residual Functional Capacity ("RFC") Assessment of January 29, 2004.  In response,

the vocational expert described this work as medium level work,[5] which encompassed

plaintiff's past job duties as a warehouse worker.  In a subsequent hypothetical, the ALJ

asked the vocational expert to consider the same RFC, but with weight restrictions as

imposed on plaintiff by Dr. Johansson—namely, restricting the hypothetical to fifteen

(15) pounds of frequent lifting/carrying and twenty (20) pounds of occasional

lifting/carrying.  The vocational expert opined that such a person would be able to work

only at a light level,[6] and thus eliminated warehouse work.  In a final hypothetical, the

ALJ asked the vocational expert to consider as "fully credible" plaintiff's testimony that

his impairments have restricted his ability to sit, stand, walk, lift, and carry; and that he

---

[5]  As defined by the C.F.R. ("the Regulations"):

> Medium work involves lifting no more than 50 pounds at a time with
> frequent lifting or carrying of objects weighing up to 25 pounds. . . .

20 C.F.R. § 404.1567(c).

[6]  As defined by the Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds. Even though the
> weight lifted may be very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves sitting most of the
> time with some pushing and pulling of arm or leg controls. To be
> considered capable of performing a full or wide range of light work,
> [plaintiff] must have the ability to do substantially all of these activities.  If
> someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of
> fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

has pain to such a degree that he must rest frequently after minimum exertion.  Therein, the vocational expert agreed with the ALJ that said restrictions would prevent plaintiff from performing any work.

Nonetheless, because the ALJ found that plaintiff could perform past relevant work, the ALJ did not proceed to step five.  Based on said finding, the ALJ concluded that plaintiff was not under a "disability" as defined in the SSA.

## V.  ANALYSIS

### A.  The Listing of Impairments

Plaintiff contends that the ALJ erred at step three because he failed to find plaintiff had a listed impairment or an equivalent, or explain why plaintiff's impairment did not meet or equal the Listing of Impairments pursuant to 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listing").  Pl.'s Brief in Supp. of Mot. for Judgment on the Pleadings Under Rule 12C Fed. Rule Civ. Pr. at 17-19 [hereinafter "Pl.'s Brief"].  The Commissioner asserts that no clinical evidence in the record supports a finding that plaintiff's injury meets the requirements of the Listing.  Memo. of Law in Opp. to Pl.'s Mot. for Judgement on the Pleadings & in Support of the Commissioner's Cross-Mot. for Judgment on the Pleadings at 16-17 [hereinafter "Commissioner's Opp."].

Pursuant to the Listing, in order for plaintiff's spine disorder to qualify as a listed impairment, he must have medical proof that said injury:

(1) resulted in the compromise of a root nerve or the spinal cord; and

(2) must be accompanied by

(A) nerve root compression characterized by

(i) neuro-anatomical distribution of pain,

9

> (ii) limitation of motion of the spine,
>
> (iii) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and
>
> (iv) if there is involvement of the lower back, positive straight-leg raising test
>
> - or -
>
> (B) spinal arachnoiditis . . .
>
> - or -
>
> (C) lumbar spine stenosis . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.04(A)-(C). In addition, the ALJ should clearly explain in the decision why or why not a claimant's injury meets a listed impairment. See Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982) (noting the ALJ's failure to "set forth a specific rationale" to explain why the plaintiff's injury did not meet the requirements of the Listing, but nevertheless finding substantial evidence within portions of the ALJ's decision and the record to support such a conclusion).

Here, the corresponding subsection of the Listing to plaintiff's injury is § 1.04(A), as described above. See Pl.'s Brief at 18; Commissioner's Opp. at 17. The ALJ concluded that "there are insufficient clinical findings to support a conclusion that [plaintiff's injury] meets or medically equals the requirements of any impairment" in the Listing. R. at 16. However, the ALJ did not set forth a specific rationale for said conclusion. Moreover, as discussed in detail below, the ALJ failed to properly analyze medical records and plaintiff's credibility; resolve inconsistencies in the record; and develop the record. Thus, it is unclear to the Court whether substantial evidence exists

to support a conclusion that plaintiff's injury does not meet the Listing requirements.  Cf. Otts v. Comm'r of Soc. Sec., 249 Fed. Appx. 887, 889 (2d Cir. 2007) (citation omitted) ("While the ALJ might have been more specific in detailing the reasons for concluding that [plaintiff's] condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence" permitted the court to affirm said conclusion.).

Accordingly, I respectfully recommend that this case be remanded to the Commissioner to set forth with sufficient specificity the reasons why plaintiff's injury does or does not satisfy the requirements of a listed impairment.

B.  Evaluating Evidence in the Record

1.  *Treating Physician Rule*

At step four, the ALJ  "accorded very little weight" to Dr. Johansson's opinion regarding plaintiff's limitations because his statements addressed "an issue reserved to the Commissioner."  R. at 17.  Plaintiff contends that the ALJ did not accord proper weight to Dr. Johansson's opinion.  Plaintiff further contends that the ALJ "could not rely on Dr. Li's opinion to outweigh the opinion of a treating physician . . . ."  Pl.'s Brief at 8. The Commissioner contends that substantial evidence supports the ALJ's decision.

It is well-settled that the ALJ must give controlling weight to the opinion of a treating physician if it is well-supported by the medical record and is not inconsistent with other substantial evidence.  See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "The regulations also require the ALJ to set forth her [or his] reasons for the weight she [or he] assigns to the treating physician's opinion."  Shaw v. Chater, 221 F.3d at 134 (citation omitted).  If the ALJ

11

does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the following factors to determine what weight said physician's opinion should have: (1) the length, nature and extent of treatment and the frequency of examination; (2) the relevant evidence presented by the treating source in support of his opinion; (3) whether the opinion is consistent with the record as a whole; (4) whether the treating source is a specialist in the area relating to his opinion; and (5) other factors which tend to support or contradict the opinion. See Shaw, 221 F.3d at 134; 20 C.F.R. § 404.1527(d)(2)-(6).

In addition, the ALJ may rely on a non-treating physician's opinions when [s]he determines not to give controlling weight to the treating physician pursuant to the factors described above. See Shaw, 221 F.3d at 134 (the ALJ erred in giving greater weight to a non-treating physician's opinion where the treating physician's observations were supported by medical evidence and consistent with the record as a whole). Furthermore, a non-medical consultant's opinion is not substantial evidence to overcome a treating physician's opinion. See Green-Younger, at 335 F.3d at 107 (non-physician's one-shot evaluation, which required verification, was not substantial evidence).

Here, the ALJ stated that he did not give weight to Dr. Johansson's opinion as to plaintiff's disability because the ALJ considered the opinion to be an issue reserved to the Commissioner pursuant to 20 C.F.R. § 404.1527(e). However, the ALJ did not analyze or give any weight to Dr. Johansson's objective medical records. Because the ALJ failed to apply the above-listed factors, it is impossible to assess whether Dr. Johannson's opinion was properly rejected.

12

Nonetheless, the ALJ concluded that plaintiff "retains the residual functional capacity to frequently lift and carry 25 pounds . . . and sit, stand or walk as required in an 8-hour work day."[7]  R. at 16.  However, neither Dr. Johansson nor Dr. Li opined as much.  For example, Dr. Johansson noted during plaintiff's October 27, 2003 visit that plaintiff "has more pain on sitting and standing for any short length of time, and this limits him very much in his activities."  R. at 104.  Dr. Li concluded that plaintiff has "a limitation on prolonged standing, walking, climbing, bending, squatting[,] . . . heavy lifting and carrying."  R. at 119.  The ALJ did not address said medical opinions in contrast to his findings.

Rather, it appears that the ALJ's findings more track the opinion of the Commissioner's non-medical consultant.  In an RFC, dated January 29, 2004, said non-medical consultant stated that plaintiff is "limited to medium activity."  R. at 123.  She found that plaintiff's subjective complaints of pain were not supported by medical evidence and therefore should be considered only "partially credible."  R. at 124.  Seemingly in contrast to said conclusion, the non-medical consultant stated that plaintiff "walks with a slight left sided limp and limitedly walks on heels and toes."  R. at 122.  The non-medical consultant also noted that plaintiff had limited flexion in the spine, limited motion in his straight leg raising, tenderness in his lumbosacral area, and "a sensory deficit to pinprick in the medial and lateral aspect of both legs and feet."  Id.  Finally, she also referred to Dr. Li's examination.  R. at 125.

---

[7]  The Court notes that the ALJ also stated that "[e]ven if claimant was limited to work at the light level of exertion, he would still be able to return to past relevant work as a delicatessen clerk."  R. at 17.  Nonetheless, the ALJ affirmatively found that plaintiff was capable of medium level work.  R. at 16, 18.

13

Thus, other than the non-medical consultant's conclusion that plaintiff could complete medium level work and that plaintiff was only partially credible, it is unclear which substantial evidence the ALJ used to support a conclusion that plaintiff could perform medium level or, at the least, light level work.  As stated above, it is not clear whether the ALJ properly rejected Dr. Johansson's opinion, but in any event, the non-medical consultant's opinion is not substantial evidence which outweighs the treating physician's opinion.  Green-Younger, at 335 F.3d at 107.  In short, "[i]n the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."  Filicomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) (citation omitted).

Accordingly, I respectfully recommend that this case be remanded to the Commissioner to set forth with sufficient specificity the factors that were applied in determining the amount of weight given to Dr. Johansson's opinion and, if the ALJ does not assign controlling weight to Dr. Johansson's opinion, to identify the substantial evidence to support his findings.

### 2. ALJ's Duty to Develop the Record

Plaintiff further asserts that the ALJ failed to elicit more information *sua sponte* from plaintiff's treating physician, including (1) a more current opinion as to plaintiff's capabilities; and (2) specific clinical findings where the ALJ found them lacking.  Plaintiff further contends that the ALJ failed to weigh the opinion of plaintiff's chiropractor, Dr. Garner.  Pl.'s Brief at 8.

Generally, "where there are deficiencies in the [administrative] record, an ALJ is under an affirmative obligation to develop a claimant's medical history," whether or not

14

the claimant is represented by counsel.  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citations omitted).  In addition, where the ALJ seeks to reject a treating physician's diagnosis, the ALJ must first attempt to fill any clear gaps in the administrative record.  Id. (citations omitted).  Furthermore, chiropractors cannot provide medical opinions, but the Commissioner may use evidence from such providers "to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work."  20 C.F.R. § 404.1513(a), (e).  See also Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995).  However, "where the ALJ possesses 'a complete medical history,' the ALJ is under no duty to seek additional information before rejecting a claim."  Peterson v. Barnhart, 219 F. Supp. 2d 491, 495 (S.D.N.Y. 2002) (quoting Rosa, 168 F.3d at 79, n.5).

Here, plaintiff contends that the ALJ failed to seek medical records from the period between December 4, 2003, the date of Dr. Li's examination of plaintiff, and August 15, 2005, the date of the ALJ's decision.  To advance his argument, plaintiff asserts that the ALJ has an obligation to develop a complete medical history for at least a twelve-month period prior to the time plaintiff filed his application for benefits, pursuant to 20 C.F.R. § 404.1512(d).  Pl.'s Brief at 13.  However, § 404.1512(d) does not state that the ALJ has an obligation to develop plaintiff's medical records within twelve months of the administrative decision.  Here, plaintiff filed his application for benefits on October 10, 2003.  Therefore, the ALJ was required to develop plaintiff's medical history starting in October of 2002.  The records before the ALJ included plaintiff's visits with Dr. Johansson from November 6, 2002 through April 27, 2005.  Therefore, the ALJ complied with § 404.1512(d).

Nevertheless, the ALJ found that said medical records contained "rather minimal

15

clinical findings." R. at 16. Therefrom, the ALJ concluded that plaintiff was capable of light or medium level work, contrary to Dr. Johansson's conclusion that plaintiff was "totally incapacitated for regular work",[8] see, e.g., R. at 104, and Dr. Li's opinion that plaintiff had "a limitation on prolonged standing, walking, climbing, bending, squatting," heavy lifting, and carrying, R. at 119. The ALJ found Dr. Johansson's records lacking. However, because Dr. Johansson's and Dr. Li's opinions did not contradict each other,[9] the ALJ should have sought more detailed records from Dr. Johansson before concluding that plaintiff could perform his regular work duties. See Atkinson v. Barnhart, 87 Fed. Appx. 766, 768-69 (2d Cir. 2004) (finding that the ALJ failed to develop the record where medical records were incomplete and lacking in detail, but "might have contained important information about the extent of plaintiff's" disability).

Next, plaintiff seeks inclusion of Dr. Garner's records to show the severity of plaintiff's impairments. See Carlantone v. Astrue, No. 08 Civ. 07393, 2009 WL 2043888, at *5 (S.D.N.Y. July 14, 2009). The Commissioner contends that said records are not relevant because they describe plaintiff's medical history after the period in which plaintiff must have shown he was disabled. Specifically, the Commissioner asserts that plaintiff must have established his disability by December 31, 2004, R. at

---

[8] As stated above, absent analysis by the ALJ, it is unclear whether the ALJ properly rejected Dr. Johansson's opinion.

[9] To the extent that the ALJ relied on Dr. Johansson's RFC of June 9, 2003, the Court notes that the medical records suggest a deterioration in plaintiff's condition, as evidenced in subsequent doctor's visits. See R. at 139 (RFC); R. at 104-05 (more recent medical records). As such, Drs. Johansson's and Li's assessments of plaintiff are similar. Moreover, even if the ALJ perceived Dr. Johansson's records to reflect inconsistencies rather than a regression of plaintiff's condition, he was obligated to seek more information from Dr. Johansson to better develop the administrative record. See Rosa, 168 F.3d at 79 (quotation omitted).

13, but Dr. Garner's records cover a period from February 2005 through March 2005, R. at 128.  However, medical evidence post-dating the period by which plaintiff had to prove his disability may "not be deemed irrelevant solely because of timing . . . [because] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought."  Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 644 (2d Cir. 2007) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).

Here, the evidence before the ALJ included records from Dr. Johansson through April 27, 2005.  See R. at 22, 146.  Dr. Garner's records were also before the ALJ.  See R. at 23.  However, the ALJ did not address any of said records in his decision.  Thus, it is unclear whether the ALJ considered said records and determined whether they were material or probative to plaintiff's disability.  Cf. Peterson, 219 F. Supp. 2d at 496 (citation omitted) (treating physician's assessment of plaintiff's condition after the disputed period, which did not provide a true retrospective diagnosis, "is not probative of the plaintiff's disability during the insured period").

Accordingly, I respectfully recommend that this case be remanded to the Commissioner to seek evidence from Dr. Johansson which might clarify inconsistencies and fill in gaps in the record.  Additionally, I respectfully recommend that, on remand, the ALJ explain to what extent, if any, Dr. Johansson's and Dr. Garner's medical records reflecting plaintiff's medical condition after December 31, 2004 are relevant to determining plaintiff's disability.

### 3.  Plaintiff's Credibility

Plaintiff testified that, due to his injury, he cannot walk or sit for more than ten to

fifteen minutes at a time; he wakes up two to three times per night; he has difficulty

concentrating and remembering things; extending his arms causes pain; and he

experiences moderate to severe pain on "good" days and "excruciating" pain on "bad"

days.  R. at 164-68.  He also testified that he has difficulty dressing and bathing

because he experiences numbness and excruciating pain as soon as he bends over.  R.

at 162.  Nevertheless, he is able to make sandwiches or provide cereal for his children;

perform light household chores with many breaks; drive to doctors' appointments; and

participate in grocery shopping, albeit with sitting breaks.  R. at 162-64.  However, the

ALJ found that plaintiff's "allegations regarding his limitations are not totally credible."

R. at 17.  Plaintiff contends that the ALJ misapplied the Commissioner's regulations and

case law regarding plaintiff's credibility and thus erred.  Pl.'s Brief at 19-20.  The

Commissioner contends that the evidence did not support plaintiff's position, therefore

the ALJ did not err.  Commissioner's Opp. at 21-22.

     "This circuit has repeatedly held that a claimant's testimony concerning his pain

and suffering is not only probative on the issue of disability, but 'may serve as the basis

for establishing disability, even when such pain is unaccompanied by positive clinical

findings or other objective medical evidence. . . .'"  Hankerson v. Harris, 636 F.2d 893,

895 (2d Cir. 1980) (citation and quotation omitted).  "Nevertheless, the ALJ has the

discretion to evaluate the credibility of a claimant and to arrive at an independent

judgment, in light of medical findings and other evidence, regarding the true extent of

the pain alleged by the claimant."  Pardilla v. Apfel, No. 98 Civ. 5357, 2000 WL 145463,

at *6 (S.D.N.Y. Feb. 9, 2000).  "However, '[i]f the ALJ decides to reject subjective

testimony concerning pain and other symptoms, [he] must do so explicitly and with

sufficient specificity to enable the Court to decide whether there are legitimate reasons

for the ALJ's disbelief and whether [his] determination is supported by substantial

evidence.'" Lugo v. Apfel, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998) (quotation and

citations omitted).  In order to satisfy the substantial evidence requirement,

> the ALJ's credibility assessment must be based on a two-step analysis of
> pertinent evidence in the record.  First, the ALJ must determine, based
> upon the claimant's objective medical evidence, whether the medical
> impairments 'could reasonably be expected to produce the pain or other
> symptoms alleged . . . .'  Second, if the medical evidence alone
> establishes the existence of such impairments, then the ALJ need only
> evaluate the intensity, persistence, and limiting effects of a claimant's
> symptoms to determine the extent to which they limit the claimant's
> capacity to work.
>
> When the objective evidence alone does not substantiate the
> intensity, persistence, or limiting effects of the claimant's symptoms, the
> ALJ must assess the credibility of the claimant's subjective complaints by
> considering the record in light of the following symptom-related factors: (1)
> claimant's daily activities; (2) location, duration, frequency, and intensity of
> claimant's symptoms; (3) precipitating and aggravating factors; (4) type,
> dosage, effectiveness, and side effects of any medication taken to relieve
> symptoms; (5) other treatment received to relieve symptoms; (6) any
> measures taken by the claimant to relieve symptoms; and (7) any other
> factors concerning claimant's functional limitations and restrictions due to
> symptoms.

Brodbeck v. Astrue, No. 05 Civ. 0257, 2008 WL 681905, at *19 (N.D.N.Y. Mar. 7, 2008)

(citing and quoting 20 C.F.R. § 404.1529(a), (c); § 416.929(a), (c)) (other citations

omitted).

Here, the ALJ failed to properly analyze the record, as described above, and

simply concluded that plaintiff was "not totally credible for the reasons set forth in the

body of the decision."  R. at 17.  Thus, the ALJ failed to (1) assess plaintiff's testimony

regarding his pain and functional limitations in accordance with the guidelines set forth

above; (2) set forth with specificity his reasons for doubting plaintiff's credibility; and (3)

19

explain the weight accorded to plaintiff's statements.  Absent said explicit findings, the

ALJ's decision requires this Court to make impermissible inferences regarding plaintiff's

credibility.  See Pardilla, 2000 WL 145463, at *6 (court refuses to make inferences

regarding plaintiff's credibility based on the ALJ's inexplicit, conclusory findings).

Accordingly, I respectfully recommend that this case be remanded to the

Commissioner to set forth with sufficient specificity the reasons why plaintiff's testimony

as to his pain and functional limitation is not credible.

4.  *Plaintiff's Capacity for Work*

Plaintiff also contends that the ALJ erred in finding that he was capable of

performing his past relevant work.  Plaintiff contends that, in failing to develop the

record, the ALJ thus failed to (1) evaluate the combined effects of his impairments; (2)

perform a function by function analysis of what he could do; and thus (3) incorrectly

relied on Dr. Johansson's RFC of June 8, 2003.  The Commissioner contends that the

ALJ properly developed the record and assessed plaintiff's capacity to work.  The

Commissioner further asserts that there was no combination of severe impairments to

consider.

An RFC considers the plaintiff's "impairment(s), and any related symptoms, such

as pain, [which] may cause physical and mental limitations that affect what [plaintiff] can

do in a work setting."  20 C.F.R. § 404.1545(a)(1).  The Commissioner bases the RFC

"on all the relevant evidence in [plaintiff's] case record."  Id.  The Commissioner also

"will consider all of [plaintiff's] medically determinable impairments of which [it] is aware,

including [plaintiff's] medically determinable impairments that are *not 'severe'* . . . ."  Id.

§ 404.1545(a)(2) (emphasis added).

20

In assessing plaintiff's RFC,

the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity.  20 C.F.R. § 404.1513(c)(1).  Only after that analysis is completed, may RFC be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.

Brodbeck, 2008 WL 681905, at *7 (citation omitted).  See S.S.R. 96-8p, 1996 WL

374184, at *1.  Further,

[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing bases (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7.

Here, the ALJ's discussion regarding plaintiff's exertional limitations included

discrediting plaintiff's subjective claims of function and pain; focusing on medical exams

from 2003; noting minimal clinical findings and "extremely conservative treatment";

referring to plaintiff's "daily activities"; and citing Dr. Li's and the non-medical

consultant's opinions.  R. at 16.  Alone, said findings fail to provide a function by

function assessment of plaintiff's exertional capacity and do not satisfy the narrative

discussion requirement.

Furthermore, periodic or occasional chores, driving when required, and taking

care of one's children does not foreclose a finding of disability.  See Balsamo v. Chater,

21

142 F.3d 75, 81-82 (2d Cir. 1998) (quotation omitted) (The SSA does not require a claimant to be an invalid in order to be found disabled.).  Rather, unless plaintiff's "'conduct truly showed that he is capable of working,'" such activities should not be held against him.  Id. (quoting Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989)).  In addition, failure to receive or a gap in medical treatment is not substantial evidence to support a conclusion contrary to a treating physician's opinion.  Filicomo, 944 F. Supp. at 170 (failure to seek medical treatment is not substantial evidence to outweigh treating physician's opinion); Shaw, 221 F.3d at 133 (three-year gap in plaintiff's medical treatment "does not negate the compelling evidence in the record as a whole that plaintiff was completely disabled").  Finally, as stated above, it is unclear from the record (1) upon which evidence the ALJ relied in determining the weight of Dr. Johansson's opinion or plaintiff's credibility, and (2) whether the evidence was fully developed.

The Court, therefore, has no basis upon which to determine whether the ALJ's finding that plaintiff had the RFC for past relevant work is supported by substantial evidence.  Accordingly, I respectfully recommend that this case be remanded to the Commissioner for further proceedings.

## VI. CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that plaintiff's motion for judgment on the pleadings should be granted to the extent it seeks remand to the Commissioner for further proceedings in accordance with this Report and Recommendation, and the Commissioner's cross-motion should be denied.

## VII.  NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall

Recommendation, and the Commissioner's cross-motion should be denied.

## VII.  NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: October ___, 2009
       White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.

23