```
┌─────────────────────────┐
│ USDS SDNY               │
│ DOCUMENT                │
│ ELECTRONICALLY FILED    │
│ DOC #: _____  │
│ DATE FILED: _____  │
└─────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY SAVA,

                         Plaintiff,

    -v-

MICHAEL J. ASTRUE as Commissioner of Social Security,[1]

                         Defendant.

---

Case No. 06-CV-3386(KMK)(GAY)

ORDER ADOPTING REPORT
AND RECOMMENDATION

KENNETH M. KARAS, District Judge:

Plaintiff brings an action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Commissioner") to deny Plaintiff's application for disability benefits. Pending before the Court are the Parties' cross-motions for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Magistrate Judge George A. Yanthis issued a Report and Recommendation ("R&R") on October 2, 2009, recommending that the case be remanded to the Commissioner for further findings (R&R 1), and Defendant filed timely objections. The Court grants Plaintiff's Motion to the extent it seeks a remand for further proceedings in accordance with this Order.

I. Background

The Court assumes familiarity with the background and procedural posture of this case, and incorporates fully the description contained within Magistrate Judge Yanthis' thorough

---

[1] Michael J. Astrue, the current Commissioner of Social Security, took office as of February 12, 2007. Pursuant to Fed. R. Civ. P. 25(d)(1), he is automatically substituted as Defendant for his predecessor in office, Jo Anne B. Barnhart, who had been named as defendant in Plaintiff's Complaint.

R&R. (*Id.* at 1-4.)

## II. Discussion

### A. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Fed. R. of Civ. P. 72(b), parties may submit "specific," "written" objections to the magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2).

Where a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

Here, Defendant has timely objected to Magistrate Judge Yanthis' conclusion that Plaintiff's motion to vacate the Commissioner's decision and remand for a hearing pursuant to Fed. R. Civ. P. 12(c) be granted. (R&R 1; Mem. of Law in Supp. of the Comm'r's Objections to the Magis. J.'s R&R ("Obj.") 1.) Thus, the Court reviews de novo the issues specifically raised in the objections, while examining for clear error only the remainder of the R&R. *See Wilds v.*

*United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169-70 (S.D.N.Y. 2003) (citing 28 U.S.C. § 636(b)).

When a claimant seeks review of a Social Security hearing regarding disability benefits, the court's function is not to determine whether the appellant is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine *de novo* whether plaintiff is disabled." (internal quotation marks and brackets omitted)); *see also Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) (same); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled de novo."). Rather, the Court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (noting that a court will only overturn an ALJ's determination if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Morrel v. Massanari*, No. 01-CV-186, 2001 WL 776950, at *5 (S.D.N.Y. July 11, 2001) ("[T]he role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." (internal quotation marks omitted)). The Supreme Court has defined "substantial evidence" as "more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

### B. Federal Standard for Disability Benefits

"To be 'disabled' . . . and therefore entitled to benefits, a claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Rosa*, 168 F.3d at 77 (quoting 42 U.S.C. § 423(d)(1)(A)). "Furthermore, an individual's impairment must be 'of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)).

To determine whether a claimant is entitled to disability benefits, the ALJ must follow the familiar five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (outlining the five steps); *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (same). The ALJ must first determine whether the claimant is currently engaged in substantial gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(i); *id.* § 404.1520(b); *Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002). If the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits the claimant's ability to participate in work-related activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *id.* § 404.1520(c); *Williams*, 204 F.3d at 49. If so, the ALJ determines whether the impairment is listed in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1, and, if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* § 404.1520(d). If the impairment does not meet or equal the criteria of a listed impairment, the ALJ must determine whether the claimant retains functional capacity to

4

perform his past work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *id.* § 404.1520(e). Where a claimant is thereafter deemed unable to perform the claimant's past work, the ALJ proceeds to the fifth step, which "requires the [ALJ] to determine whether there is other work within the national economy that the [claimant] is qualified to perform." *Peterson*, 219 F. Supp. 2d at 493; *see also* 20 C.F.R. § 404.1520(a)(4)(v); *id.* § 404.1520(f)-(g) (noting that the ALJ must show that there are other jobs existing based on the claimant's vocational factors, which include age, education, and work experience, as well as the claimant's residual functional capacity). If so, then the ALJ will determine that the individual is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled."). The claimant has the burden of proof for the first four steps, but the burden rests with the Commissioner as to the fifth step – the determination on alternative work. *See Peterson*, 219 F. Supp. 2d at 493; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that Commissioner is required to bear burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step;" for instance, "[i]f the process ends at step two, the burden of proof never shifts").

### C. The ALJ's Determination

The ALJ determined that Plaintiff met steps one and two. (Admin. R. ("R.") 17.) However, the ALJ determined that Plaintiff's "impairment does not meet or medically equal the requirements of any impairment listed in" 20 C.F.R. § 404, and hence fails to meet step three. (R. 17.) Finally, the ALJ determined that Plaintiff also failed to meet step four because Plaintiff's "impairment does not prevent him from performing past relevant work as a warehouse laborer or delicatessen clerk," as Plaintiff was capable of "the full range of work at the medium

5

level of exertion."[2] (*Id.* at 18.) Because the ALJ determined that Plaintiff failed steps three and four of the test, the ALJ did not discuss step five, and determined that Plaintiff was "not under a disability, as defined in the Social Security Act and Regulations." (*Id.*)

### 1. Step Three

Magistrate Judge Yanthis recommends that the Court conclude that the ALJ did not have substantial evidence for determining that Plaintiff did not meet the requirements of step three, because "the ALJ did not set forth a specific rationale for said conclusion . . . [, and] the ALJ failed to properly analyze medical records and [P]laintiff's credibility; resolve inconsistencies in the record; and develop a record." (R&R 10-11.) Defendant objects to this conclusion, and so the Court will review it de novo. (Obj. 1-2.)

In general, an ALJ's determination "'must contain a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions.'" *Cruz v. Astrue*, No. 06-CV-3670, 2009 WL 1024242, at *11 (S.D.N.Y. Apr. 9, 2009) (quoting *Diaz v. Apfel*, 994 F. Supp. 541, 548 (S.D.N.Y. 1998)) (internal quotation marks omitted). However, if "the referenced medical evidence, together with [a] lack of compelling contradictory evidence from the plaintiff" constitute substantial evidence, the ALJ's determination should be upheld. *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (summary order); *see also Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination . . ., since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

evidence."); *Cruz*, 2009 WL 1024242, at *11 ("[T]he ALJ's omission of a full analysis does not preclude this Court from upholding the decision, provided the Court is convinced that the ultimate conclusion is supported by substantial evidence on the record.").

The ALJ considered, inter alia, the following evidence: (1) Plaintiff's claims that he was unable to lift more than 20 pounds; sit, stand or walk for more than 15-20 minutes before resting or changing position; that his pain on a good day was 6-7, on a scale of 1-10, and 9-10 on a bad day; that he has 3-5 bad days a month; that his left leg goes numb when he attempts to bend his back; and that he is able to drive a car, go shopping, and perform light household work if he does so slowly; (2) Dr. Johansson, a specialist in physical medicine and rehabilitation, treated Plaintiff periodically from November 6, 2002, until at least December 31, 2004; (3) over that period, Dr. Johansson made numerous comments and diagnoses, the most relevant of which are that: as of November 6, 2002, there was no evidence of muscle atrophy or focal weakness in Plaintiff's arms and legs; Plaintiff had no focal weakness as of January 6, 2003; Plaintiff had an L5 disc herniation with impingement of the left nerve root as of January 13, 2003; Plaintiff had "lower back pain, lumbar radiculopathy, and degenerative disc disease of the lumbar spine" as of June 9, 2003, which would allow Plaintiff to sit for 3-5 hours and stand or walk for 4-6 hours in an 8 hour period; Plaintiff reported pain and numbness in his left lower leg on August 4, 2003; Plaintiff's pain and numbness in his leg had diminished by August 20, 2003, though Plaintiff reported left shoulder pain; as of October 19, 2003, Plaintiff had a "small to moderate-sized focal disc protrusion at L5-S1 that was slightly displacing the left S1 nerve root;" and Plaintiff had "chronic lower back pain and degenerative disc disease of the lumbar spine" and "should avoid all lifting and carrying" as of October 13, 2004; (4) Plaintiff was referred to Dr. Li for

"consultative orthopedic examination" on December 4, 2003; and (5) Dr. Li made several comments and diagnoses, the most relevant of which are that: Plaintiff had some loss of sensation in both legs; Plaintiff had a full range of motion of the hips, knees, and ankles with intact strength and reflexes; an X-ray revealed only disc space narrowing at L5-S1 (Dr. Johansson's more specific descriptions of Plaintiff's problems with his L5 disc were based on two MRIs); Dr. Li's diagnostic impression was to "[r]ule out discogenic disease of lumbosacral spine with radiculopathy to both lower extremities;" and Plaintiff had limited capacity for "prolonged standing, walking, climbing, bending, squatting [or] heavy lifting [or] carrying." (R. 14-15, 119 (internal quotation marks omitted).) Based on this evidence, the ALJ determined that "there [were] insufficient clinical findings to support a conclusion that [Plaintiff's condition] meets or medically equals the requirements" of the relevant impairments for step three. (*Id.* at 16.)

The relevant impairment is contained in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1 § 1.04(A) ("§ 1.04"), which requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* Defendant argues that the ALJ had substantial evidence that Plaintiff did not meet these requirements because "Dr. Johansson[] repeatedly reported that examination results showed no evidence of muscle atrophy, muscle weakness, reflex abnormality, or sensory deficit." (Obj. 2 (internal citations omitted).) The weakness of this claim, however, is that it ignores the fact that Plaintiff did not complain of numbness until August 4, 2003 (R. 15), at

8

which point Dr. Johansson noted the numbness in his report (*id.* at 107), and that the numbness was later confirmed by Dr. Li, who stated that Plaintiff had a "sensory perception to pinprick deficit in both legs medial and lateral aspect and also in both feet," (*id.* at 119). Given that Plaintiff could demonstrate a sensory deficit, there was no need for him to also demonstrate reflex loss. *See* § 1.04 (requiring "sensory *or* reflex loss" (emphasis added)); *Singleton v. Astrue*, No. 08-CV-2784, 2009 WL 6325521, at *6 (S.D.N.Y. Aug. 13, 2009) (noting that there was not substantial evidence that plaintiff did not have "either sensory or reflex deficits"), *adopted*, 2010 WL 1328976 (S.D.N.Y. Apr. 5, 2010); *Crump v. Astrue*, No. 06-CV-1003, 2009 WL 2424196, at *5 (N.D.N.Y. Aug. 5, 2010) (finding the requirements of § 1.04 met because of evidence of, inter alia, sensory loss without mention of reflex loss); *Pitcher v. Barnhart*, No. 06-CV-1395, 2009 WL 890671, at *11 (N.D.N.Y. Mar. 30, 2009) (same).

However, Plaintiff was also required to establish either "atrophy with associated muscle weakness or muscle weakness" in order to establish motor loss. § 1.04. There is no evidence of muscle atrophy, as the only references to muscle atrophy in the record state that Plaintiff had none. (R. 116 (reporting "no focal signs of muscle atrophy, [and] no focal weakness in arms or legs" as of November 6, 2002); *id.* at 119 (reporting "no muscle atrophy" in both Plaintiff's upper and lower extremities as of December 4, 2003).) The evidence in the record also provides substantial evidence for the ALJ's conclusion that there was no muscle weakness, as Dr. Johansson stated that there was: "[n]o focal weakness" on October 13, 2004; "no focal weakness" on June 9, 2003; "no focal weakness" on March 5, 2003; "[n]o focal weakness" on January 6, 2003 and; "[g]enerally well-developed musculature" and "no focal weakness in arms or legs" on November 6, 2002. (R. 110, 113, 116, 136, 138.) Therefore, though the ALJ did not

9

give an express rationale, there is sufficient uncontradicted evidence in the record to provide substantial evidence for the conclusion that Plaintiff failed to meet step three. *See Otts*, 249 F. App'x at 889 (noting that "[w]hile the ALJ might have been more specific in detailing the reasons for concluding that [plaintiff] did not satisfy a listing impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff" was sufficient to uphold the ALJ's finding).

### 2. Step Four

In determining that Plaintiff retains sufficient capacity for his past work, and has "the residual functional capacity to perform the full range of work at the medium level of exertion," the ALJ relied primarily on the "extremely conservative" nature of Plaintiff's treatment and Plaintiff's ability to perform light household chores and go shopping, as well as Plaintiff's report that Vioxx substantially helped with his pain. (R. 16.) The ALJ noted that Dr. Johansson, Plaintiff's treating physician, believed that Plaintiff was "totally incapacitated for the kind of work he did in the past," but accorded the statement "very little weight" because the ALJ believed Dr. Johansson to be "address[ing] an issue reserved to the Commissioner" under 20 C.F.R. § 404.1527(e)(1). (R. 16-17 (internal quotation marks omitted).)

Regarding the opinion of a treating physician, the Second Circuit has explained:

> The [Social Security Administration ("SSA")] recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant. A treating physician's statement that the claimant is disabled cannot itself be determinative. However, SSA regulations advise claimants that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) will be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks, citations,

10

and emphasis omitted); *see also Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009) (summary order) ("[A]n ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence . . . ." (internal citation omitted)); *Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (summary order) (requiring an ALJ to give "controlling weight" to a treating physician's opinion when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with substantial evidence in the case record" (internal quotation marks and brackets omitted)); *cf. Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("'Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . substantial evidence in the record, such as the opinions of other medical experts'" support a contrary conclusion (quoting *Halloran v. Barhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

When a treating physician's opinion is not "given controlling weight," certain factors must be considered, including: "'(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'" *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also Wright v. Barnhart*, 473 F. Supp. 2d 488, 493 (S.D.N.Y. 2007) (quoting *Clark* for the same four-factor test); *Pizzo v. Barnhart*, 325 F. Supp. 2d 438, 449 (S.D.N.Y. 2004) (considering the same four factors as well as "other factors brought to the SSA's attention that tend to support or contradict the opinion"); *Echevarria v. Apfel*, 46 F. Supp.

2d 282, 292 (S.D.N.Y. 1999) (applying the same five factors as in *Pizzo*). "The regulations also require the ALJ to set forth her reasons for the weight she assigns to the treating physician's opinion." *Shaw*, 221 F.3d at 134; *see also Pizzo*, 325 F. Supp. 2d at 449 (requiring the ALJ to "set forth his reasons for the weight assigned to the treating physician's opinion"); *Echevarria*, 46 F. Supp. 2d at 291-92 (requiring the ALJ to "give good reasons in the notice of determination or decision for the weight given to the treating source's opinion" (internal quotation marks and brackets omitted)).

In this case, there is no evidence that the ALJ considered the four factors. Indeed, the ALJ did not believe it was necessary to apply them because, in the ALJ's view, "Dr. Johansson's statement addresses an issue reserved to the Commisioner." (R. 17.) Defendant argues (Obj. 3), that the ALJ was correct because "some kinds of findings – including the ultimate finding of whether a claimant is disabled and cannot work – are reserved to the Commisioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation omitted). Correct statement of the law though this is, it only means that "a treating physician's statement that the claimant is disabled cannot itself be determinative." *Id.* Thus, while the treating physician's ultimate opinion may not be controlling, the ALJ is required – subject to the test described above – to give controlling weight to the treating physician's opinions on the functional capacity that Plaintiff retains. *See id.* (holding that while opinions of treating physicians were not "controlling," the ALJ nonetheless committed error in not adequately explaining why the opinions of the treating physicians were not afforded controlling weight). Thus, Dr. Johansson's opinion, based on his medical treatment of Plaintiff, that Plaintiff was incapacitated to perform the sort of the work Plaintiff had performed in the past, is the sort of statement that the ALJ was

required to consider, and the ALJ's failure to do so was not consistent with the law.

Defendant's second argument is that even if the ALJ applied the wrong legal standard, there was substantial evidence in the record, including statements by Dr. Johansson, on which to base a conclusion that Plaintiff was capable of light work. (Obj. 3-5.) The Court does not agree, as much of what Dr. Johansson has stated – when considered with other evidence that Plaintiff is disabled – is at least arguably consistent with Plaintiff's view that he is disabled. Thus, the ALJ's failure to provide "'good reasons'" for not crediting Plaintiff's treating physician "is a ground for remand." *Snell*, 177 F.3d at 133 (quoting *Schaal*, 134 F.3d at 505).

Magistrate Judge Yanthis also recommended that the Court find that the ALJ failed to adequately "provide a function by function assessment of [P]laintiff's exertional capacity," and failed to "satisfy the narrative discussion requirement." (R&R 21; *see generally id.* at 20-22.) Though Defendant objects to the R&R's conclusion that the case should be remanded (Obj. 1), Defendant makes no specific objections to this portion of the R&R and the Court may, therefore, review for clear error only. *See Eisenberg*, 564 F. Supp. 2d at 226 (stating that a court may review an R&R for clear error where no "specific written objections" are made).[3]

In order to determine residual functional capacity ("RFC"), "the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity." *Brodbeck v. Astrue*, No. 05-CV-257, 2008 WL 681905, at *7 (N.D.N.Y. Mar. 7, 2008) (citing 20 C.F.R. § 404.1513(c)(1)). "Only after that analysis is completed, may RFC be expressed in terms of the

---

[3] The Court notes that it would reach the same conclusion upon a de novo review.

13

exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* (citing *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007)). In this case, the ALJ moved straight from a discussion of the general medical evidence to a conclusion as to the level of work Plaintiff was capable of without ever performing a function by function analysis. (R. 16.) The Court, therefore, adopts Magistrate Judge Yanthis' recommendation on this point, and remands the case so that the ALJ can apply the correct legal standard to Dr. Johansson's opinions and the other evidence, and conduct a function by function analysis of Plaintiff's RFC.

### D. The ALJ's Duty to Develop the Record

Magistrate Judge Yanthis also recommended that the Court remand the case to the ALJ "to seek evidence from Dr. Johansson which might clarify inconsistencies and fill in gaps in the record" and to "explain to what extent, if any, Dr. Johansson's and Dr. Garner's medical records reflecting [P]laintiff's medical condition after December 31, 2004[,] are relevant to determining [P]laintiff's disability." (R&R 17.) In particular, Magistrate Judge Yanthis seemed concerned that the ALJ had not determined whether Dr. Johansson's statements were inconsistent or reflected a deterioration in Plaintiff's condition. (*Id.* at 16 n.9.) Defendant objects to Magistrate Judge Yanthis' conclusions. (Obj. 5-7.) First, Defendant argues that the ALJ's decision was based on the determination that Dr. Johansson's opinion on Plaintiff's capacity was reserved to the Commissioner rather than on a lack of support for Dr. Johansson's position and that, therefore, the ALJ was not required to more fully develop the record. (*Id.* at 5.) Since the Court has already rejected the argument that the ALJ could ignore Dr. Johansson's opinion, the Court is confident that, on remand, the ALJ will give Plaintiff an opportunity to present evidence

14

relevant to Dr. Johansson's statements.[4]

Second, Defendant argues that the ALJ can make a determination in the absence of Dr. Garner's records, primarily because "there is nothing in Dr. Garner's clinic notes which suggests that [P]laintiff's condition was any more severe than Dr. Johansson reported." (*Id.* at 5-6.) Because Defendant does not object to the R&R's legal conclusions, the Court need only note that to the extent that Dr. Garner's records help provide substantial evidence, whether consistent or inconsistent with Dr. Johansson's conclusions, it is confident that the ALJ will consider it with the appropriate weight when determining what sort of work, if any, Plaintiff is capable of performing. (*Id.* at 6 (noting that "the R&R is correct that medical evidence which post-dates the period at issue may be relevant for determining the claimant's condition during the relevant period" (footnote omitted)).)

### E. Plaintiff's Credibility

Magistrate Judge Yanthis further recommended that the Court "remand[] to the Commissioner to set forth with sufficient specificity the reasons why [P]laintiff's testimony as to his pain and functional limitation is not credible." (R&R 20.) Defendant has no objection to the legal framework as outlined in the R&R, but objects to the application of the law to this case. (Obj. 7-8.) First, when rejecting subjective testimony as to a petitioner's pain level, an ALJ must "determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged." *Brodbeck*, 2008 WL 681905, at *19 (internal quotation marks and citation omitted). Second, if

---

[4] This is also the appropriate resolution for determining what, if any, gaps are in Dr. Johansson's records. (Obj. 6.)

the medical evidence by itself establishes any impairments, the ALJ need only determine the limiting effects of the symptoms on a claimant's capacity to work. *Id.* In addition,

> [w]hen the objective evidence alone does not substantiate the intensity, persistence or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatement received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing 20 C.F.R. § 404.1529(c)(3); *id.* § 416.929(c)(3)). "An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence." *Id.* Here, the ALJ considered the medical evidence, including, inter alia, Plaintiff's October 2003 MRI, his gluteal tenderness, his relatively normal gait, and the lack of evidence of focal weakness or muscle atrophy, and concluded that the objective evidence did not support Plaintiff's subjective assessment of his abilities or pain. (R. 16.) The ALJ did not then address *all* the factors mentioned above, but did take into account Plaintiff's daily activities, Plaintiff's medication, and other treatments Plaintiff received. (*Id.*) The ALJ, therefore, appears to have considered the factors appropriate to making a credibility determination, and the ALJ's credibility determination is entitled to deference.

The only cause for concern is the reliance the ALJ appears to have placed on "the opinions of the consultant examiner and Disability Determination Service reviewer," the latter of whom was not a doctor, in light of what the ALJ described as "the rather minimal clinical findings." (*Id.*) Even the consultant examiner's (Dr. Li's) views are only entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order)

16

("[G]enerally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'" (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990))). Once again, however, any issue as to whether the ALJ improperly discounted Dr. Johansson's findings, or could have elicited more information from Dr. Johansson, can be considered in evaluating Plaintiff's credibility on remand.

### III. Conclusion

For the reasons stated herein, this case is remanded to the ALJ for proceedings consistent with this Order. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated: August 12, 2010
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17

Service List

For Mailing by Clerk's Office:

Irwin Milton Portnoy, Esq.
Irwin Portnoy and Associates, P.C.
542 Union Avenue,
New Windsor, NY 12553
importnoy@aol.com

Susan D. Baird, Esq.
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
susan.baird@usdoj.gov

Susan Colleen Branagan, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street, 3rd Floor
New York, NY 10007
susan.branagan@usdoj.gov

Copy To:

Honorable George A. Yanthis
United States Magistrate Judge